IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**SHANNON N.,**
**Petitioner Below, Petitioner**

**v.) No. 25-ICA-353**     (Fam. Ct. Calhoun Cnty. Case No. FC-07-2024-D-6)

**BOBBY S.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Shannon N.[1] ("Mother") appeals the Family Court of Calhoun County's August 14, 2025, Final Order on Parenting Plan and Child Support. Respondent Bobby S. ("Father") filed a response.[2] No reply was filed.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decisions but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding the matter to the family court is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The unmarried parties share two minor children, a daughter, born August 22, 2008, and a son, born February 1, 2013. On March 22, 2024, Mother filed her Petition for Allocation of Custodial Responsibility and Decision Making and the Establishment of Child Support pertaining to the minor children. Prior to that filing, the parties operated without an official parenting plan. Mother acted as primary caretaker and residential parent while Father exercised parenting time around his work schedule, which varied greatly over the years. In her petition, Mother sought to make their de facto parenting plan official. On April 17, 2024, Father filed a counterpetition seeking a 50-50 parenting plan.

During the family court's June 26, 2024, initial hearing, the court found that Mother rebutted the 50-50 presumption of custodial allocation. At the hearing, the court ordered

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is represented by Jared S. Frame, Esq. Father is represented by Gerald M. Titus, Jr., Esq.

Father to have parenting time with the parties' daughter every other weekend during the summer and the parties' son to switch to a week on/week off schedule for the summer months.[3] Nearly a year later, on May 28, 2025, the family court entered its order memorializing the June 26, 2024, hearing. In that order, the family court declined to rule on child support, stating without explanation that the issue was deferred, and, thus, the court granted no temporary award of child support. The order further reflected the continuance of the final hearing to May 21, 2025.

According to the court's July 1, 2025, Status Order memorializing the May 21, 2025, hearing, at the outset of the hearing, counsel announced that the parties had negotiated an agreement on all outstanding issues, and the only remaining item for the court's consideration was the calculation of child support. The negotiated agreement included a stipulation that, once calculated, child support would be effective as of June 1, 2024, the first day of the month after Mother served Father with her petition, as Father had not paid any child support during the pendency of the case.

During the May 21, 2025, hearing, while Mother's counsel put the details of the parties' agreement on the record, the court voiced its objection to the stipulated start date of Father's child support obligation as it would place Father immediately in arrears for a substantial amount.[4] Mother's counsel objected, arguing that Father had not paid child support for the duration of the pending custody matter, leaving Mother responsible for one hundred percent of the minor children's expenses, and that the court's finding would not be fair, equitable, or in the children's best interests. Furthermore, Mother argued that the parties had mutually agreed on the effective date for child support and the family court should not interfere in that agreement without finding that the agreement contained an error or some other discrepancy. Mother asserted that the court's objection improperly interfered with the parties' rights to negotiate and could derail the parties' agreement entirely.

According to the July 1, 2025, Status Order, Mother conferred with her counsel regarding the court's objection, and decided that she would honor the agreement, with the family court noting Mother's objection. As described in the July 1, 2025, order, another issue arose regarding "a minor provision" of the agreed parenting plan, and "[i]n response to the same, the [c]ourt stated that if the [p]arties did not agree then the [c]ourt would just set a 50/50 parenting plan at the next hearing in this case." Mother asserts that the parties' agreement included a parenting plan that did not split parenting time in an equal (50-50)

---

[3] Former Family Court Judge Steven Jones conducted the June 26, 2024, hearing, but Family Court Judge Betty Gregory entered the resulting May 28, 2025, order.

[4] Although the parties did not place the recording of the May 21, 2025, hearing into the appendix record for the Court's review, the family court's July 1, 2025, order contains a narrative of this exchange.

manner, but that when Father heard the family court state that it would enter a 50-50 plan if the parties could not agree, Father withdrew his consent to the agreement. Mother's counsel objected again to the family court's intrusion into the parties' agreement, which objection the family court noted. Before adjourning, the family court calculated child support based on the parties' then-current parenting plan, using the basic shared formula, and found that Father would owe Mother $670.83 per month, effective June 1, 2025. Then, finding no agreement between the parties, the family court set the matter for a final hearing on July 23, 2025.

On July 11, 2025, Mother filed a petition for contempt against Father, alleging that he failed to pay child support on June 1, 2025, and July 1, 2025, as ordered. The family court entered an Order and Rule to Show Cause setting Mother's contempt petition for hearing on July 23, 2025.

The parties appeared on July 23, 2025, for a final hearing. That morning, Mother began her case-in-chief, testified, and was cross-examined by Father's counsel. During the lunch break, the parties again discussed settlement. According to Mother, Father expressed a change of heart and a willingness to return to the terms of the previous negotiated settlement agreement.

When the hearing resumed, counsel informed the court that the parties had again reached an agreement to resolve the matter. Mother's counsel set forth the terms of the agreement on the record, including that Mother would dismiss her contempt petition against Father for not paying child support in June and July of 2025, but that Father would owe those amounts as arrearages. Mother's counsel acknowledged the court's ruling at the May 21, 2025, hearing that it would not order Father to pay child support between June 1, 2024, and June 1, 2025, over Mother's objection. Father testified regarding his knowing and voluntary decision to change his mind and choose settlement. When questioned by his attorney, Father also acknowledged his understanding that Mother could appeal the court's ruling against Father paying child support prior to June 2025.

On August 14, 2025, the court entered its Final Order on Parenting Plan and Child Support, which adopted the parties' agreed parenting plan and again ordered Father to pay child support to Mother in the amount of $670.83 per month, effective June 1, 2025. The order further provides:

> The [c]ourt denies [Mother's] request for child support to begin on the 1st of the month after [Father] was served with the petition herein. The [c]ourt finds that doing the same would result in [Father] immediately being in arrears over $8,000, and that the same would not be fair and equitable. [Mother's] objection was noted by the [c]ourt.

It is from this August 14, 2025, order that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother argues that the family court erred by denying child support as of the date of service on Father, particularly because she alleges the court inserted itself into and negatively impacted the parties' stipulated agreement on this issue, and then refused to consider arguments, evidence, or briefing on the issue prior to its denial.

First, Mother states that per the parties' agreement announced at the May 21, 2025, hearing, Father voluntarily stipulated to paying child support retroactively to June 1, 2024, and was willing to do so until the court interfered with the agreement and eventually caused Father to withdraw. Once the parties re-entered the settlement agreement at the final hearing, the court did not reconsider its ruling.

Mother argues that the family court's ruling undermines Father's fundamental duty to support his children, noting that Father paid no support for the two minor children for over a year while the case was pending. *See* Syl. Pt. 3, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991) (holding that child support is owed by a parent to a child and cannot be waived or contracted away). Mother also points to Rule 23 of the Rules of Practice and Procedure for Family Court (2002), which provides,

> Rule 23. Retroactivity of Child Support and Spousal Support Orders
> Except for good cause shown, orders granting relief in the form of spousal support or child support shall make such relief retroactive to the date of service of the motion for relief.

Mother contends that Rule 23 requires the family court to show good cause before deviating from starting child support on the date of service of the applicable motion. She alleges that the court's order is not sufficient in that regard, as it fails to make any statement regarding good cause. Moreover, Mother posits that the order merely states in summary fashion that it would be unfair to start Father in arrears, but the order includes no corresponding analysis of fairness to Mother or the minor children and does not address whether denying retroactive child support would be in the best interests of the children.

Accordingly, Mother requests reversal of that portion of the order and that we instruct the family court to issue a new order establishing child support beginning June 1, 2024.

Notably, Father does not argue in support of the family court's ruling. In his brief, Father concedes that the family court did not establish a record to justify its denial of Mother's request for the earlier effective date.

Upon review, we conclude that the August 14, 2025, order lacks the requisite finding of good cause for deviating from the presumption in Rule 23 that the court's child support order "shall make such relief retroactive to the date of service of the motion for relief." Moreover, the order fails to sufficiently communicate the rationale for the family court's decision to deviate from the presumptive child support order. *See Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996) ("The order must be sufficient to indicate the factual and legal basis for the . . . ultimate conclusion so as to facilitate a meaningful review of the issues presented."). As the SCAWV has found, "our task as an appellate court is to determine whether the [lower] court's reasons for its order are supported by the record." *Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W. Va. 453, 456, 525 S.E.2d 334, 337 (1999). The parties do not dispute that in May of 2025 they had agreed to make child support retroactive to June 1, 2024 (later than the date of service of Mother's petition), but the family court interjected and ruled, sua sponte, that it would not order retroactive child support. As far as can be ascertained on the record before this Court, prior to the family court's interjection, Father never objected to the earlier effective date, did not ask for the family court's intervention on that issue, and did not attempt to establish "good cause" for delaying his child support payment until June 1, 2025.

Accordingly, we vacate the August 14, 2025, order only as to the date child support starts. Upon remand, the family court is directed to apply the presumption of Rule 23 to the evidence and sworn testimony of the parties previously presented at the May 21, 2025, and July 23, 2025, hearings and to hold any additional hearings that it deems necessary to determine whether good cause exists. The family court is further instructed to enter a new order establishing the start date for Father's child support obligation consistent with these instructions.

Vacated and Remanded, With Directions.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White